IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JIMMY L. KARNES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 6:12-CV-53 |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Jimmy L. Karnes ("Karnes") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Karnes alleges that the Administrative Law Judge ("ALJ") erred by improperly discounting his credibility. Karnes also filed a motion for the court to take judicial notice of additional evidence. Dkt. No. 21. Having reviewed the record, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Karnes's Motion for Summary Judgment (Dkt. No. 13), **DENYING** Karnes's Motion to Take Judicial Notice (Dkt. No. 21) and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Karnes failed to demonstrate that he was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Karnes filed for DIB on December 8, 2009, claiming that his disability began on October 11, 2009, due to osteoarthritis, bone/disc deterioration, thyroid and high blood pressure problems, sleep apnea, and enlarged heart. R. 19, 195–96, 239. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 107–09, 116–18. On July 19, 2011, ALJ Mark O'Hara held a hearing to consider Karnes' disability claim. R. 35–78. Karnes was represented by an attorney at the hearing, which included testimony from Karnes and vocational expert Lori Cowen. R. 35–78.

On August 25, 2011, the ALJ entered his decision analyzing Karnes's claim under the familiar five-step process[2] and denying Karnes's claim for benefits. R. 19–29. The ALJ found

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age,

2

that Karnes suffered from the severe impairments of obesity, obstructive sleep apnea status post two surgeries, a back disorder, osteoarthritis and hypertension. R. 21. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22–23. The ALJ further found that Karnes retained the RFC to perform light work that does not require climbing ladders, ropes and scaffolds; requires no more than occasional climbing of stairs and ramps; and avoids even moderate exposure to workplace hazards and respiratory irritants.[3] R. 23. The ALJ determined that Karnes could not return to his past relevant work as a furnace helper (R. 27), but that Karnes could work at jobs that exist in significant numbers in the national economy, such as cashier, cafeteria attendant, and mail clerk. R. 28. Thus, the ALJ concluded that Karnes was not disabled. R. 29. On September 13, 2012, the Appeals Council denied Karnes's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

This case involves a single issue: whether the ALJ improperly discredited Karnes's testimony regarding the extent and intensity of his pain. Karnes argues that the ALJ incorrectly discounted the credibility of his testimony by relying upon a few specific irrelevant statements, and failing to find that the severity of his symptoms is supported by the medical record. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision and recommend affirming the final decision of the Commissioner.

Karnes was 49 years old on the date of the ALJ's decision, and has a GED. R. 24. Karnes last worked as a furnace helper at Roanoke Electric Steel until October 2009, when he

---

education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

Case 6:12-cv-00053-NKM-RSB   Document 24   Filed 02/10/15   Page 3 of 10   Pageid#: 836

stopped due to pain. R. 46. Karnes has a history of degenerative disc disease in his back and osteoarthritis in his knees, hands and feet. R. 338–43. Prior to his alleged disability onset date he underwent surgery on both shoulders and his left knee. R. 733.

Karnes testified at the hearing that he has constant pain in his lower back and joints at a level of 8 on a scale from 1 to 10. R. 47, 52. Karnes stated that he has to wear gloves on his hands and socks on his feet when he uses a prescribed heat lotion medication for pain. R. 49. Karnes testified that he suffers from sleep apnea but cannot use a CPAP machine at night for various reasons. R.50. He cannot sleep for more than 2 hours at night, which causes him to be drowsy during the day. R. 51. Karnes also testified that he has left shoulder pain and must wear knee braces while walking. R. 49. Karnes estimated that he can stand for 10 minutes at a time and sit for 10 minutes at a time; that he can walk about 250 feet while wearing his knee braces; and can lift five pounds at a time. R. 52–53.

In his opinion, the ALJ found that Karnes suffered from the severe impairments of obesity, obstructive sleep apnea, a back disorder, osteoarthritis and hypertension. The ALJ determined that Karnes's medically determinable impairments could reasonably be expected to cause some symptoms and limitations of the general type that were alleged, but that Karnes's contentions as they relate to the intensity, persistence and limiting effects of his symptoms are not entirely credible in light of the longitudinal record as a whole. R. 25.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Karnes's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Karnes has met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93

(4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Karnes's claimed symptoms and the effect those disabling conditions have on Karnes's ability to work. Id. at 594–95. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

In his decision, the ALJ noted several specific statements made by Karnes at the hearing that the ALJ believed were contradicted by his treatment records, such as being prescribed gloves and ointment for his hands and feet, the amount of alcohol he typically drank; and the amount that he exercised. R. 27, 66, 68, 69. Karnes argues that it is error for the ALJ to discount his credibility based upon these specific statements. However, it is clear from the ALJ's opinion that he based his evaluation of Karnes's credibility not only on those inconsistent statements, but on the record as a whole.

The ALJ gave several reasons for discounting Karnes's allegations of debilitating pain, including the fact that "no treating, examining, or reviewing medical sources has opined that the claimant is physically more limited than the above residual functional capacity." R. 27. The ALJ noted that the objective findings in Karnes's treatment records do not support his allegations that he suffers debilitating pain throughout his body, and fatigue and weakness in his hands. R. 26. Indeed, Karnes's treatment records note normal muscle strength in his upper and lower extremities, no sensory deficits in his extremities, negative straight leg raise tests, and no significant gait abnormalities. R. 442, 532, 734.

Likewise, Karnes's treatment has been fairly sporadic and conservative, which is

5

inconsistent with allegations of debilitating pain. Karnes has a history of degenerative disc disease in his back and osteoarthritis in his knees, hands and feet. R. 338–43. He was referred to G. Samarasinghe, M.D., for pain management in 2008, and was diagnosed with low back pain, polyarthralgia and osteoarthritis of the bilateral shoulders. R. 441–43. He received medial branch nerve blocks in December 2008 and January 2009, and a lumbar facet denervation in February 2009. R. 436–39, 462. In April 2009, Karnes visited William Elias, M.D., for sleep apnea, and it was noted that he "has never shown good compliance to CPAP, even though many attempts at manipulations have been tried." R. 479. He reported that he is a weightlifter for recreation and drinks six beers per week on his days off. R. 479. He also reported that he works rotating shifts, with four days on and four days off, and functions "very well" at work and has "has not had any reports of not functioning well or sleeping on the job." R. 479.

Karnes returned to Dr. Samarasinghe in October 2009, and stated that the denervation controlled his symptoms but he was having recurrent pain. R. 455. Karnes underwent additional lumbar facet joint injections. R. 455. An MRI of Karnes's spine taken in November 2009 showed multi-level degenerative change, but no significant spinal canal narrowing or neural foraminal narrowing. R. 432–33.

Karnes returned to Dr. Elias for his sleep apnea in December 2009, and was found to be noncompliant. R. 476. In late March 2010, Karnes underwent a laryngoscopy, which demonstrated an almost complete nasal airway obstruction due to septal deviation, turbinate hypertrophy and nasal valve collapse. R. 500. Karnes underwent a septoplasty, adenoidectomy, and nasal valve reconstruction in April 2010. R. 557–617. In 2011, Karnes required additional surgery to clear his airway obstruction. R. 620.

Karnes sought no additional treatment for his back and joint pain until October 12, 2010, when he visited Akhtar Purvez, M.D. for pain management. R. 733–34. Dr. Purvez diagnosed

degenerative disc disease, low back pain, facet arthropathy, and possible rheumatoid arthritis. R. 734. Dr. Purvez discussed with Karnes the necessity to rule out rheumatoid arthritis, the importance of medication management, and his need to follow up with his primary care physician. R. 734–35.

Karnes presented to orthopedist Jesse Stem, M.D. in January 2011, for left-sided low back pain. Dr. Stem diagnosed low back pain, lumbar radiculopathy, and lumbosacral disk space collapse with acquired foraminal stenosis. R. 532. Dr. Stem recommended that Karnes undergo a left-sided nerve root block at L5-S1 and obtain an updated MRI to evaluate the extent of his foraminal narrowing. Karnes was sent for an MRI in February 2011, which showed multilevel broad base disc bulging and facet arthrosis with no significant spinal canal narrowing. Karnes had mild neural foraminal narrowing on the right at L5-S1 but no neural foraminal narrowing on the left. R. 537. Karnes did not receive any follow up treatment from Dr. Stem.

The ALJ reviewed Karnes's treatment records in detail and found them to be inconsistent with an individual experiencing debilitating symptoms. The ALJ properly considered the treatment Karnes sought and received, the limited nature and timing of Karnes's treatment, and the evidence of inconsistent statements; which are all proper bases for discounting a claimant's credibility. See, e.g., Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (failure to seek treatment can be basis for discounting claimant's credibility). Moreover, while the ALJ noted that Karnes made statements that were contradicted by the record, the ALJ subsequently stated, "the totality of the evidence fails to substantiate that his limitations are of the degree and intensity alleged and that they are of a nature to preclude him from performing basic work activities, at least at the limited light exertional level." R. 27.

Karnes does not point to any evidence in the record that the ALJ failed to consider or assert that the ALJ utilized an improper legal standard when determining Karnes's credibility.

7

My inquiry is not whether Karnes's testimony is corroborated by other evidence. Rather, my inquiry is whether ALJ's decision is supported by substantial evidence in the record before the court. 42 U.S.C. § 405(g). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. Spencer v. Barnhart, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001)). Here, the ALJ's decision identifies the evidence forming the basis of his credibility determination, and adequately explains his reasons for finding that Karnes's statements about his symptoms are not fully credible. The ALJ's decision further explains in detail the bases for his determination that Karnes is not disabled, and there is substantial evidence in the record to support that decision. I therefore recommend affirming the ALJ's decision.

### Motion to Take Judicial Notice

Shortly before the hearing on these motions, Karnes filed a motion for the court to take judicial notice of attached print outs of internet pages relating to the topical medications which Karnes was prescribed as of January 28, 2011. Dkt. No. 21. Karnes asks that the court take judicial notice, pursuant to the web site for the National Institutes of Health, that four of the medications Karnes was prescribed can be used with the application of gloves, and one medication should be covered due to sunlight sensitivity. Dkt. No 21.

Karnes's motion is essentially a request for the court to consider additional evidence in its consideration of this case. "A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 96 n. 3 (4th Cir. 1991); see also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would

8

have changed the outcome of the Commissioner's decision. Wilkins, 953 F.2d at 96. Karnes has the burden of demonstrating that a remand is appropriate given any new and material evidence. Meadows v. Astrue, Civ. Action No. 5:08cv01129, 2010 WL 1380117, at *3 (S.D. W.Va. Mar. 31, 2010).

Here, given the analysis set forth above, I find that this additional information is not new, and there is no reasonable possibility that it would have changed the outcome of the Commissioner's decision. Accordingly, the information related to Karnes's topical medications is not material, and I recommend denying Karnes's motion to take judicial notice (Dkt. No. 21).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, **DENYING** plaintiff's motion to take judicial notice, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge